Otto C. Schultz, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Maurice S. Jelenko, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 27242, 27243.   Promulgated October 23, 1951.

*William H. Charles, Esq.*, for the petitioners.
*Elmer L. Corbin, Esq.*, for the respondent.

698

DISNEY, *Judge:* The only question is whether the petitioners are taxable in 1946 on the difference between the price at which they obtained stock in their employer-corporation under an employee-bonus agreement and the fair market value of the stock when it was obtained in 1946.

The courts, over a long period of time, have considered questions similar to the one here involved. In 1946, after the Supreme Court's decision in *Commissioner* v. *Smith*, 324 U. S. 177, the Commissioner promulgated new regulations in regard to this question. The change

appears in T. D. 5507 (1946–1 C. B. 18) and was made effective only as to agreements entered into after February 26, 1945 (the date of the Supreme Court's opinion in the *Smith* case). In effect the change was that thereafter if property was transferred by an employer to an employee at less than fair market value, the difference is in the nature of compensation, includible in gross income, and that the property shall take a basis of fair market value at time of transfer. It is clear, as provided in T. D. 5507, that property transferred by an employer to an employee pursuant to the exercise of any option granted to the employee before February 26, 1945, must be considered in the light of the *Smith* case and prior regulations. Here the contract and all amendments, providing the alleged option, were all prior to February 26, 1945, so far as resulting in the stock here involved, since the amendment of February 1, 1946, followed the receipt, on January 31, 1946, of the stock here involved.

Regulations 111, section 29.22 (a)–1 applied prior to February 26, 1945, and in pertinent part provides:

If property is transferred by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, regardless of whether the transfer is in the guise of a sale or exchange, such shareholder or employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value to the extent that such difference is in the nature of (1) compensation for services rendered or to be rendered or * * *.

The Commissioner's viewpoint on this subject, involving contracts granted prior to February 26, 1945, is in part founded on I. T. 3795 (1946–1 C. B. 15), the pertinent part of which is set forth in the margin.[1] In their attempt to show that the amount here in question was not income, the petitioners also rely on I. T. 3795. The point of contention between the parties is their different interpretations of the part involving whether at the time the options were granted there was a substantial difference between the fair market value of the stock and

---

[1] Treasury Decision 5507, supra, does not apply to the case of the exercise * * *, at whatever date, of an option which was granted to an employee prior to February 26, 1945, to purchase stock of the employer corporation * * *.

Accordingly, in view of the prior development of the regulations and interpretations relative to employee stock options * * * as respects an option granted to an employee prior to February 26, 1945, unless at the time such option was granted there was a substantial difference between the fair market value of the stock and the option price therefor, or, within the purview of section 29.22 (a)–1 of Regulations 111 prior to the amendments made by Treasury Decision 5507, supra, the employee would otherwise clearly realize income by way of compensation through the exercise * * * of the option, this office will hold that the exercise * * * of such option * * * does not result in income to the employee by way of compensation * * * provided, however, that on or before July 1, 1946, the employee * * * and the employer * * * file * * * written consents * * * agreeing that the basis to the employee * * * for the stock acquired or to be acquired pursuant to the option shall be the actual price paid therefor and that no deduction shall at any time be claimed attributable to any aspect of the option arrangement * * *.

the option price. The petitioners claim that there was no substantial difference between the option price and the market price at the time the options were granted, while the respondent contends, secondarily, that there was a substantial difference.

After study and analysis of I. T. 3795 and the situation in this case, it is our opinion that the question of "substantial difference between the fair market value of the stock and the option price therefor"—as stated in I. T. 3795—is not involved in the instant situation, and that the only question for our consideration is whether within the purview of section 29.22 (a)–1 of Regulations 111 the petitioners as employees realized income by way of compensation through the exercise of the alleged option. Not only does the *Smith* case, *supra* (applicable to the situation here involved because it grows out of and depends upon contracts, including alleged options, prior to February 26, 1945), hold that if an employer as compensation for services rendered gives an employee an option to purchase stock in the corporation, at a price not then less than market value, the difference between option price and market value when the stock later is obtained under the option, is compensation for services and income taxable to the employee; but if we here apply I. T. 3795 the result is the same. For we find I. T. 3795 to provide, in effect, that an exercise of an option granted to an employee prior to February 26, 1945, does not result in income to the employee by way of compensation (if as was done here there is written consent agreeing to use of market price as basis) but with two definite exceptions:

* * * unless [a] at the time such option was granted there was a substantial difference between the fair market value of the stock and the option price therefor, or [b], within the purview of section 29.22 (a)–1 of Regulations 111 prior to the amendments made by Treasury Decision 5507, supra, the employee would otherwise clearly realize income by way of compensation through the exercise * * * of the option, * * *.

Obviously, therefore, if [b] here applies it is unnecessary to consider [a] as to whether there was substantial difference between fair market value and option price. It is clear to us that the effect of I. T. 3795 was that the new provisions, if there was any option granted prior to February 26, 1945, would not apply if there was such substantial difference between fair market value and option price, but that in any event if the case was one coming within the purview of section 29.22 (a)–1 of Regulations 111 in that any difference between fair market value and price at which transferred was in the nature of compensation for services rendered, then such difference, at the time of transfer, must be reported in gross income. The contract here considered contains various references to employment, to bonus payable in stock or cash depending upon circumstances and the selection

made, and to the methods of "determining the price at which said stock shall be computed." It is patent, we think, that the alleged "option" was merely one of choice or election as to whether under different circumstances stock or cash should be taken as bonus and what method should be used in determining the price at which bonus stock should pass to an employee, as compensation. The contract first provides for such employment, for the devotion of the employee's entire time and his compliance with the company's regulations and rules applicable to his position. It then provides that "in addition to the regular semimonthly compensation" the employee "shall receive a bonus" depending upon the net profits and payable, on the first $150,000, in stock and above that figure half in stock and half in cash with right on the part of the employee "to elect to take the entire bonus in common stock." Then follows the provision for "determining the price at which said stock shall be computed." [The reference last above is to the original contract but on this question the amendments do not vary the situation.] The word "option" does not appear before the paragraph providing the two alternative methods of "determining the price at which said stock shall be computed," and it does not appear elsewhere than in the statement of the two alternative methods of figuring the stock except in the ninth paragraph where it is referred to as the option to take stock and where the word "option" is also referred to in reciting the corporation's right to pay "the amount due second party [the employee] under the terms hereof either in stock or cash" and of selecting which method theretofore provided shall be considered as basis for determining the price of stock to be delivered under the terms of the contract. We find in all this merely the mechanics of payment of a bonus in compensation of an employee. Though there was testimony by a former officer of the company (not of the petitioners, who did not testify) to the effect that the intent of the corporation in the contract was not to pay compensation, the contract clearly contradicts it. The contract gives no right to take stock other than within the limit of the 2½ per cent bonus. Therefore, in our view, even if the contract be considered to involve option within the purview of I. T. 3795, it is an option through the exercise of which the employee clearly realized income by way of compensation.

If on the other hand the contract does not contain option, the situation clearly falls within Regulations 111, section 29.22 (a)–1 for it is stipulated that the stock when taken by the petitioners under the contract on January 31, 1946, was taken at a price less than the fair market value as determined. Therefore under the *ratio decidendi* of the *Smith* case, *supra*, and the language of I. T. 3795 as to an employee clearly realizing income by way of compensation through the exercise of any option, within section 29.22 (a)–1 of the regulation, we

hold that all that was realized from the contracts, i. e., the full fair market value of the stock purchased under contracts here in question, constituted compensation for services. This conclusion renders it unnecessary, as we have above indicated, to consider whether there was substantial difference between fair market value and option price at date of option.

*Decisions will be entered for the respondent.*